STATE, *EX RELATIONE* WOODSIDES, v. McDANIEL.

1. The codification of the statutes adopted in 1882, under the requirements of the constitution, and known as the general statutes of that year, is valid, notwithstanding it did not relate to but one subject and was without a title. And on its passage by the general assembly, it was subject to amendment in the same manner as ordinary acts are.

2. The office of register of mesne conveyances is a legislative office, and therefore subject to be modified, limited or abolished by the legislature. Its duties having been devolved by statute upon the clerk of court, it was

within the power of the legislature to take it away from the clerk during his term of office, create it a separate office, provide for the election of an incumbent and transfer to one so elected the duties and emoluments of that office.

---

This was an original application to the Supreme Court in *quo warranto* by Thomas L. Woodsides, under the facts set forth in the opinion.

*Messrs. W. H. Perry, J. H. Heyward* and *C. M. Furman,* for relator, cited 10 *How.* 416; 4 *Wheat.* 629; *Cool. Con. Lim.* *276–7; *State* v. *Herriot, MSS. Dec.* 1827; 7 *Rich.* 368; 2 *S. C.* 81; 26 *Wis.* 428; 5 *N. Y.* 285; 21 *Wend.* 563; 44 *Geo.* 463; 7 *Stat.* 296; 11 *Id.* 88, 115; 13 *Id.* 229; *Gen. Stat.* 1872, *page* 187; 2 *Stat.* 14, 120, 137; 3 *Id.* 303; 1 *Id.* 143, 190; 5 *Id.* 674; 6 *Id.* 12; 1 *McC.* 238, 251; 44 *Mo.* 129; 52 *Miss.* 665; 40 *Id.* 268; 37 *N. Y.* 518; 7 *Ind.* 157.

*Messrs. Wells & Orr* and *G. W. Westmoreland,* contra, cited 1 *Hill* 267; 2 *McC.* 301; 2 *Bailey* 524, 554; 2 *Strobh.* 530; *Bailey Eq.* 97; 4 *S. C.* 430; 9 *Id.* 288; 13 *Id.* 228; 30 *Cal.* 680.

January 30th, 1883.   The following order was passed by

MR. CHIEF JUSTICE SIMPSON.   On hearing the pleadings, the agreed statement of facts and the argument of counsel, and after full consideration thereof, it is adjudged that the plaintiff relator is entitled to the relief demanded in his complaint, and that judgment be entered accordingly, and also for the plaintiff's costs and disbursements. The reasons upon which this judgment is based will be announced in an opinion hereafter to be filed.

March 20th, 1883.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   At the general election in November, 1882, the relator was elected register of mesne conveyances for Greenville county, an election for said officer in said county at each general election having been provided for by amendment to the General Statutes, passed at the session of 1881-82. *Gen. Stat.,* § 764. After giving the required bond and receiving his commission from the governor, he demanded the books and records of said office of the respondent, W. A.

McDaniel, clerk of the court. McDaniel declined to give them up, claiming that having been elected to the office of clerk of the court in said county, at the general election in 1880, when the duties of register of mesne conveyances were attached to said office, and his term not having expired by two years, that he was entitled to hold on for that time. Upon this refusal, the relator commenced this proceeding in the nature of *quo warranto*, which, upon an agreed statement of facts without action, has been heard under the original jurisdiction of this court.

The ground relied upon by the respondent to sustain his refusal, is the unconstitutionality of the act under which the relator claims to have been elected. This proposition is urged upon three grounds: 1. Because it was an amendment to an act as to a matter not expressed in the title of said act, and therefore in violation of section 20, article II., of the constitution, which declares that every act and resolution having the force of law shall relate to but one subject, and that shall be expressed in the title. 2. That McDaniel having been elected clerk for four years, when by law the duties of register of mesne conveyances had to be performed by the clerk, he had a vested right in said office, both by law and by contract, of which he could not be deprived by an " act." 3. That the office of register of mesne conveyances was a constitutional office with a fixed term, and therefore beyond the reach of an " act."

The first ground, we think, is met by section 3, article V., of the constitution, which provides that the general assembly, at its first session, and within every subsequent period of ten years, shall make provision to revise, digest and arrange under proper heads the body of our laws, civil and criminal, &c., &c. This section not only authorizes the general assembly to consolidate the matter directed therein, but imposes it as an absolute duty, and inasmuch as no special mode is prescribed for the performance of this duty, the end carries with it all the necessary powers, the general assembly having *carté blanche* in their exercise according to its discretion.

No doubt the end intended to be accomplished was the formation of a code containing all the acts of force at the time in a statutory form and arranged according to some definite and

well-considered plan, which, being adopted as a whole, would take the place of the mass of separate statutes found scattered through different volumes containing the numerous acts of the different sessions. At all events the general assembly seems to have come to the conclusion that the requirements of this section of the constitution could be best accomplished by the enactment of a general statute of the kind indicated above. Hence the commission to whose labors the work was entrusted, and hence the general statutes which have been the result.

Now, it is admitted that this general statute does not relate to but one subject which is expressed in its title—on the contrary it relates to the numerous subjects found in the different acts which it embraces and codifies, and there seems to be no title attached; and being in both respects in direct conflict with section 20, article II., of the constitution, if that section applies of course it would follow that the position of the respondent is well taken. Does it apply? We think not, for the reason indicated above. We do not see how the work required of the general assembly, section 3, article V., referred to *supra,* could possibly be performed with that body trammeled and hampered by section 20, article II.

The provisions of the constitution evidently intended that all the acts passed in the different decades of our history, should be arranged and embraced together in one general and convenient form, and when so arranged should have the force and effect of law. We see no way in which this could be done except by the passage of one general act containing them all, duly ratified and approved, and inasmuch as this could not be done in accordance with the requirements of section 20, article II., we must conclude that said section was never intended to apply to this duty, as we can not think that the constitution would impose a duty upon the general assembly, and at the same time tie its hands and thereby prevent the discharge thereof.

In our opinion section 3, article V., makes an exception to section 20, article II., and is in the nature of a proviso thereto. The two should be read together, and when thus read both can be sustained in harmony, as follows: Every act and resolution having the force of law shall relate to but one subject, which

shall be expressed in the title, except as to the revision and codification of the statutes, which the general assembly is required to make every ten years, in such way and according to such scheme as may be deemed best. Thus construed, we think the general assembly had power to put the general statutes upon its passage without regard to section 20, article II., and when thus upon its passage it was subject to such amendments as in its wisdom the legislature might adopt according to the rules governing in such cases.

We understand that the objection that the two houses did not concur in the amendment in question has been withdrawn. It therefore need not be considered. Nor in the view we have taken, is it necessary to consider the question of fact, whether this amendment was read three times in each house, because, being simply an amendment to a bill which was thus read, the rule suggested was complied with in the three readings of the original bill. We conclude that the first ground relied on by respondent can not be sustained.

Second. Did the respondent have such vested right in the office of register of mesne conveyances, by virtue of his being clerk of the court, as that the legislature could not divest it? As to this, it is only necessary to say that a public office, created by legislative enactment, never escapes from the control of the legislature; on the contrary, such office exists by sufferance only, as it were. If there be no constitutional inhibition, its powers and duties may be modified or limited as the public interests may require, or the entire office may be abolished at the will of the legislature. See the numerous authorities cited by the relator, and especially our own case of *Alexander* v. *McKenzie*, 2 *S. C.* 81.

It is said, however, that while this may be the case as to offices created by acts of the general assembly, yet this has no application here because this is a constitutional office of four years. This position has no better foundation than those already considered. The office of register of mesne conveyances seems to have come down to us from a remote period in our history. In 1685 (2 *Stat.* 14) we find provision made for a register of marriages, births, &c. In 1695 (2 *Stat.* 120) this officer was

required to reside in Charleston.  In 1698 it was enacted that the sale, conveyance or mortgages of land first recorded in the register's office in Charleston, should be good as against conveyances not so recorded.  2 *Stat.* 137.  This last appears to be the first mention of an office for the recording of deeds, &c.

In the constitution of 1776 (1 *Stat.* 133) the office is mentioned by name as " ' register ' of mesne conveyances, to be elected by joint ballot of the general assembly and legislative council, and to hold his office during good behavior."  In the constitution of 1778 (1 *Stat.* 143) it is provided that the register of mesne conveyances in each district shall be elected by joint ballot of the senate and house of representatives for the term of two years.

In the constitution of 1790 no mention is made in terms of this office, but section 2, article VI., (1 *Stat.* 190,) after having directed how certain named officers should be elected, provides that " all other officers shall be appointed as they hitherto have been, until otherwise directed by law."

The matter remained in this condition until 1799 (7 *Stat.* 296), when an act was passed constituting the clerk of the court of each district where the county courts had been established, as register of mesne conveyances.  In 1812 (5 *Stat.* 674) it was enacted that registers should be elected by the legislature for a term of four years.  In 1839 (11 *Stat.* 88) it was enacted that clerks of the court, whose election had previously been given to the people, should be the registers of mesne conveyances in their respective districts, except in the districts of Georgetown and Charleston.

Thus the law stood at the adoption of the constitution of 1868.  The act of 1839 was embodied in the general statutes, and under this act the clerks of the several counties have since been discharging the duties of register, except in Georgetown and Charleston.  In 1882, by the act now under consideration, a change was made as to Greenville county, which provides that the register for that county shall be elected at every general election, thus substantially cutting down the term of office for this county for two years, and withdrawing it from the duties of the clerk of the court.  This act also provides that the register for Charleston shall be the register for the new county of Berkeley.

The constitution of 1868 makes no mention of the office of register of mesne conveyances.

It will be seen from this history that under the constitutions of 1776 and 1778, this office was a constitutional office, the tenure under the first being good behavior, and under the second for two years. In the constitution of 1790 it was impliedly recognized as in existence, and to remain so until otherwise directed by law. Since then, and up to the constitution of 1868, by virtue of the above provision of the constitution of 1790, it has been entirely under the control of the legislature, as appears from the various acts referred to above, to wit: Acts of 1799, 1812 and 1839, *supra*. The constitution of 1868, as has been stated, makes no provision in reference to it, either as to the mode of election or its terms. At the adoption of this constitution, the act of 1839, which imposed the duties of register upon the clerks of most of the counties, was of force, and this act remained of force, by virtue of its original enactments, until it was incorporated into the general statutes, in 1872.

Thus it will be seen that, at the session of 1882, when the present act was passed, the office of register and the mode of having its duties performed depended solely and entirely upon the act of 1839, which had been passed by virtue of the constitution of 1790, and which had been re-enacted and incorporated into the general statutes in 1872. In 1882, therefore, the constitution of 1790 having been swept away and a new constitution adopted in 1868, which latter made no mention of this office, it was simply (and nothing more) a legislative office, and, therefore, under the authorities already cited, subject to be modified, limited, or altogether abolished, at the will of the legislature.

Let this opinion be filed with the judgment of this court heretofore pronounced and entered.

Application refused.